## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 18-cv-2092

ELIAZAR BARBECHO BONILLA

    Plaintiff,

v.

CARLOS JAVIER PALOMINO BUCH and
TOMKE WILLS

    Defendants.

---

## COMPLAINT

---

Plaintiff, Eliazar Barbecho Bonilla, by and through counsel, brings this action against her former employers, Carlos Javier Palomino Buch and Tomke Wills (collectively "Defendants"), and alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for damages brought by Ms. Barbecho Bonilla, who was required to work extreme hours for Defendants and their family members for unlawfully low compensation and under abusive working conditions.

2. Defendants employed Ms. Barbecho Bonilla primarily in Mexico City, Mexico, but they also employed her during trips to the United States, which are the subject of this complaint.

3. Between 2014 and 2018, Defendants brought Ms. Barbecho Bonilla to the United States on several occasions and required Ms. Barbecho Bonilla to work often in excess of 90 hours per week for less than $2/hour.

4. During the trips to the United States, Defendants withheld Ms. Barbecho Bonilla's passport so she could not leave her employment with Defendants.

5. Defendants brought Ms. Barbecho Bonilla to the United States under false pretenses using materially false and misleading statements and by making such statements to the U.S. government, including through the use of contracts setting forth specific wages and hours.

6. Defendants never intended to comply with their contractual obligations and in fact did not comply, instead paying Ms. Barbecho Bonilla woefully inadequate wages for often thirteen or more hours per day, seven days per week—all while subjecting her to psychological and emotional abuse.

7. Ms. Barbecho Bonilla relied upon Defendants' promises and representations as embodied in their employment agreement that she would be properly compensated in accordance with U.S. laws.

8. Ms. Barbecho Bonilla, therefore, brings this action to recover damages for injuries inflicted by Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §1595; the Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101, *et seq.*; Colorado Minimum Wage of Workers Act, Colo. Rev. Stat. §8-6-101,*et seq.*and Article XVIII, Section 15 of the Colorado Constitution; and common law claims under Colorado law for breach of contract and unjust enrichment.

## JURISDICTION AND VENUE

9. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 (federal question), 29 U.S.C. § 216 (FLSA), 18 U.S.C. §1595 (TVPA), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Ms. Barbecho Bonilla's related claims under Colorado law.

10. Venue is proper pursuant to 28 U.S.C. § 1391. All of the events or omissions giving rise to Ms. Barbecho Bonilla's claims occurred in the District of Colorado. Defendants own property in Colorado.

## **PARTIES**

11. Ms. Barbecho Bonilla is a Mexican citizen domiciled in Colorado.

12. From approximately June 2013 until August 2018, Ms. Barbecho Bonilla was employed as a domestic worker for Defendants in Mexico and in the United States.

13. Defendant Carlos Palomino Buch is an adult male, and is domiciled in Mexico City, Mexico.

14. Defendant Carlos Palomino Buch owns a vacation home in Steamboat Springs, Colorado, located at 2410 Ski Trail Lane, Steamboat Springs, Colorado.

15. Defendant Tomke Wills is an adult female and is domiciled in Mexico City, Mexico.

16. Defendants regularly travel to Defendant Palomino Buch's Steamboat Springs, Colorado home for vacation.

17. Upon information and belief, Defendants are a married couple.

18. At all times relevant to this action, both Defendants employed Ms. Barbecho Bonilla to care for their children and were her employers within the meaning of 29 U.S.C. § 203(d) and Colo. Rev. Stat. § 8-4-101.

## **STATEMENT OF FACTS**

I.      PLAINTIFF'S TRANSPORTATION TO AND WORK IN THE UNITED STATES

19.     In June 2013, Ms. Barbecho Bonilla began working for Defendants in their home in Mexico City, Mexico.

20.     Defendants employed Ms. Barbecho Bonilla as a domestic worker. Her role included caring for Defendants' two children as well as cleaning and caring for Defendant's home.

21.     In or about January of 2014, Defendants applied to the U.S. Department of State for a visa for Ms. Barbecho Bonilla to accompany them to their home in Steamboat Springs, Colorado, to continue working for Defendants in the same capacity while Defendants were on vacation.

22.     Defendants successfully the visa for Ms. Barbecho Bonilla to accompany them to the United States.

23.     On or about January 23, 2014, Ms. Barbecho Bonilla traveled with Defendants from Mexico City to Colorado in her role as their employed domestic worker. Defendants and Ms. Barbecho Bonilla remained in Colorado until their departure on or about February 5, 2014.

24.     On or about July 6, 2014, Ms. Barbecho Bonilla traveled with Defendants from Mexico City to Colorado in her role as their employed domestic worker. Defendants and Ms. Barbecho Bonilla remained in Colorado until their departure on or about February August 8, 2014.

25.     During the 2014 trips to Colorado, Ms. Barbecho Bonilla was on call at all times and worked for Defendants approximately thirteen hours or more per day with no days off. She received 2000 Mexican Pesos per week for her work.

26. In each of the years 2015-2018, Defendants either renewed or obtained new visas for Ms. Barbecho Bonilla so she could travel with Defendants to the United States as their domestic service employee.

27. On or about December 17, 2015, Ms. Barbecho Bonilla traveled with Defendants from Mexico City to Colorado in her role as their employed domestic worker. Defendants and Ms. Barbecho Bonilla remained in Colorado until their departure on or about December 29, 2015.

28. During the 2015 trip to Colorado, Ms. Barbecho Bonilla was on call at all times and worked for Defendants approximately thirteen hours or more per day with no days off. She received 2500 Mexican pesos per week for her work.

29. On or about February 2, 2016, Ms. Barbecho Bonilla traveled with Defendants from Mexico City to Colorado in her role as their employed domestic worker. Defendants and Ms. Barbecho Bonilla remained in Colorado until their departure on or about on February 14, 2016.

30. During the February 2016 trip to Colorado, Ms. Barbecho Bonilla was on call at all times and worked for Defendants approximately thirteen hours or more per day with no days off. She received 2500 Mexican pesos per week for her work.

31. On or about August 3, 2016, Ms. Barbecho Bonilla traveled with Defendants from Mexico City to Colorado in her role as their employed domestic worker. Defendants and Ms. Barbecho Bonilla remained in Colorado until their departure on or about on August 26, 2016.

32. During the August 2016 trip to Colorado, Ms. Barbecho Bonilla was on call at all times and worked for Defendants approximately thirteen hours or more per day with no days off. She received 3300 Mexican pesos per week for her work.

33. On or about February 14, 2017, Ms. Barbecho Bonilla traveled with Defendants from Mexico City to Colorado in her role as their employed domestic worker. Defendants and Ms. Barbecho Bonilla remained in Colorado until their departure on or about on February 26, 2017.

34. On or about August 3, 2017, Ms. Barbecho Bonilla traveled with Defendants from Mexico City to Colorado in her role as their employed domestic worker. Defendants and Ms. Barbecho Bonilla remained in Colorado until their departure on or about on August 20, 2017.

35. During the February and August 2017 trips to Colorado, Ms. Barbecho Bonilla was on call at all times and worked for Defendants approximately thirteen hours or more per day with no days off. She received 3300 Mexican pesos per week for her work.

36. On or about December 15, 2017, Ms. Barbecho Bonilla traveled with Defendants from Mexico City to Colorado in her role as their employed domestic worker. Defendants and Ms. Barbecho Bonilla remained in Colorado until their departure on or about January 5, 2018.

37. During the December 2017 to January 2018 trip to Colorado, Ms. Barbecho Bonilla was on call at all times and worked for Defendants approximately thirteen hours or more per day with no days off. She received 5800 Mexican pesos per week for her work.

38. On or about March 22, 2018, Ms. Barbecho Bonilla traveled with Defendants from Mexico City to Colorado in her role as their employed domestic worker. Defendants and Ms. Barbecho Bonilla remained in Colorado until their departure on or about on April 2, 2018.

39. During the March 2018 trip to Colorado, Ms. Barbecho Bonilla was on call at all times and worked for Defendants approximately thirteen hours or more per day with no days off. She received 3300 Mexican pesos per week for her work.

40. On or about August 2, 2018, Ms. Barbecho Bonilla traveled with Defendants from Mexico City to Colorado in her role as their employed domestic worker. Ms. Barbecho Bonilla worked for Defendants until she left their employment on August 10, 2018.

41. During the August 2018 trip to Colorado, Ms. Barbecho Bonilla was on call at all times and worked for Defendants approximately thirteen hours or more per day with no days off. She received 942.85 Mexican pesos for her first two days of work. Defendants entirely withheld Ms. Barbecho Bonilla's pay for her final week of wages.

II. DEFENDANTS' RECRUITMENT OF PLAINTIFF IN MEXICO

42. In 2014, as a condition of her employment with Defendants while in the United States, Defendants required Ms. Barbecho Bonilla to sign a labor contract. The contract states that while in Colorado, Ms. Barbecho Bonilla would work 40 hours per week. The contract further states that Ms. Barbecho Bonilla would be paid at the greater of the Colorado minimum wage, the prevailing wage, or $8.00 per hour. The contract provided that if she worked more than 40 hours a week, she would be entitled to overtime pay at the rate of 150% of the regular rate of pay.

43. In 2015, as a condition of her employment with Defendants, Defendants required Ms. Barbecho Bonilla to sign a labor contract. The contract states that while in Colorado, Ms. Barbecho Bonilla would work 40 hours per week. The contract further states that Ms. Barbecho Bonilla would be paid at the greater of the Colorado minimum wage, the prevailing wage, or $8.24 per hour. The contract provides that if Ms. Barbecho Bonilla worked more than 40 hours a week, she would be entitled to overtime pay at the rate of 150% of the regular rate of pay.

44. On information and belief, in 2016, as a condition of her employment with Defendants, Defendants required Ms. Barbecho Bonilla to sign a labor contract. The contract states that while in Colorado, Ms. Barbecho Bonilla would work n 40 hours per week. The

7

contract further states that Ms. Barbecho Bonilla would be paid at the greater of the Colorado minimum wage, the prevailing wage, or the hourly rate specified in the contract, and provides that if Ms. Barbecho Bonilla worked more than 40 hours a week, she would be entitled to overtime pay at the rate of 150% of the regular rate of pay.

45. On information and belief, in 2017, as a condition of her employment with Defendants, Defendants required Ms. Barbecho Bonilla to sign a labor contract. The contract states that while in Colorado, Ms. Barbecho Bonilla would work 40 hours per week. The contract further states that Ms. Barbecho Bonilla would be paid at the greater of the Colorado minimum wage, the prevailing wage, or the hourly rate specified in the contract. The contract provides that if Ms. Barbecho Bonilla worked more than 40 hours a week, she would be entitled to overtime pay at the rate of 150% of the regular rate of pay.

46. On information and belief, in 2018, as a condition of her employment with Defendants, Defendants required Ms. Barbecho Bonilla to sign a labor contract. The contract states that while in Colorado, Ms. Barbecho Bonilla would work 40 hours per week. The contract further states that Ms. Barbecho Bonilla would be paid at the greater of the Colorado minimum wage, the prevailing wage, or the hourly rate specified in the contract. The contract provides that if Ms. Barbecho Bonilla worked more than 40 hours a week, she would be entitled to overtime pay at the rate of 150% of the regular rate of pay.

47. Defendants presented these fully-executed contracts between Ms. Barbecho Bonilla and Defendants to the U.S. government solely for the purpose of defrauding the U.S. government and to secure a visa for Ms. Barbecho Bonilla to work for Defendants in the United States.

48. Defendants made materially false and misleading statements about Ms. Barbecho Bonilla's intended pay to the U.S. government for the purpose of securing Ms. Barbecho Bonilla's visa and to secure her labor in the United States.

49. Defendants did not—at any time—pay Ms. Barbecho Bonilla the wage rates contemplated under the contracts but instead paid her an arbitrary, lump-sum wage each week that Ms. Barbecho Bonilla worked for Defendants in Colorado.

50. Defendants told her the contractual rates was only to support their request for a visa and that she would not be given the pay in the contracts.

51. Defendants never intended to comply with their contractual obligations.

52. Defendants never paid Ms. Barbecho Bonilla the contemplated 150% rate for overtime hours.

53. Defendants never paid Ms. Barbecho Bonilla the Colorado minimum wage.

54. Defendants never paid Ms. Barbecho Bonilla the federal minimum wage.

55. Defendants never paid Ms. Barbecho Bonilla the prevailing wage for domestic workers in northwest Colorado.

56. When the Defendants paid Ms. Barbecho Bonilla, Defendants intentionally did not furnish Plaintiff with a wage statement that accurately listed the following: the dates of work covered by the payment; Plaintiffs name; Employers' names; Employers' address and telephone number; Plaintiffs hourly rate of pay; Plaintiffs overtime rate of pay; and the basis for computing Plaintiffs rate of pay.

57. Instead, Defendants paid Plaintiff in cash via a third-party in Mexico, and Plaintiff had no access to those funds while in the United States.

58. Defendants did not keep accurate records of wages or of hours worked by Ms. Barbecho Bonilla.

59. Defendants knew that Ms. Barbecho Bonilla did not speak English.

60. Defendants knew that Ms. Barbecho Bonilla had no family or community in the United States and could not drive.

61. Defendants knew that Ms. Barbecho Bonilla had limited or no understanding of the U.S. legal system and its labor laws.

62. Defendants knew Ms. Barbecho Bonilla depended on them entirely for her understanding of the wage she was entitled to, and they intentionally misled her about the wage she was owed.

63. Defendant Wills frequently degraded Ms. Barbecho Bonilla by stating that she hardly worked and did not deserve higher pay, and asking why she could not perform the duties of her job by keeping the children calm.

64. Defendants took Ms. Barbecho Bonilla's passport and travel documents from her against her will. Defendants hid those documents from her to retain control over her and prevent her from leaving her employment with them.

65. As a direct and proximate result of Defendants' actions, Ms. Barbecho Bonilla believed she could not leave against the wishes of Defendants and that she would be punished if she did so.

III. PLAINTIFF'S ESCAPE

66. Ms. Barbecho Bonilla escaped her employment with Defendants in August of 2018.

67. In August 2018, Ms. Barbecho Bonilla befriended a resident of the Steamboat Springs, Colorado area, identified for purposes of this complaint as "Ms. Smith."

68. Ms. Smith learned of Ms. Barbecho Bonilla's working conditions.

69. Ms. Smith contacted Colorado Legal Services and asked them to speak with Ms. Barbecho Bonilla about her rights. Ms. Smith further put Ms. Barbecho Bonilla in contact with advocates and local support.

70. On August 10, 2018, Steamboat Springs Police Department officer served as civil standby while Ms. Barbecho Bonilla recovered her belongings, passport, and travel documents and escaped with an advocate.

71. During Ms. Barbecho Bonilla's escape, Defendants threatened to report Ms. Barbecho Bonilla to the police if she attempted to leave Defendants' employment.

72. During Ms. Barbecho Bonilla's escape, Defendants stated that they kept control of Ms. Barbecho Bonilla's passport because a prior employee of theirs had "escaped."

73. During Ms. Barbecho Bonilla's escape, Defendants verbally demeaned Ms. Barbecho Bonilla and yelled at her.

74. On information and belief, the officer, who provided civil standby, had a body camera that recorded Defendants' statements during Ms. Barbecho Bonilla's escape.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE MINIMUM WAGE PROVISION OF THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 206,** *et seq.***,**
(All Defendants)

75. Ms. Barbecho Bonilla realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

76. This claim arises under the FLSA, 29 U.S.C. § 201, et seq., against Defendants.

77. Ms. Barbecho Bonilla was employed by Defendants as a domestic worker.

78. Defendants failed to pay Ms. Barbecho Bonilla the required minimum wage for her work.

79. Ms. Barbecho Bonilla did not voluntarily consent to provision of housing as a deduction from her wages, and any housing provided was for the primary benefit of Defendants.

80. Defendants failed to maintain records related to the wages, hours, and other conditions of employment in which Ms. Barbecho Bonilla worked.

81. Defendants' violations of the FLSA were willful in that Defendants knew or showed reckless disregard for whether Defendants' conduct was prohibited by the FLSA.

82. As a result, Ms. Barbecho Bonilla suffered damages.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT
## 18 U.S.C. §1597
(All Defendants)

83. Ms. Barbecho Bonilla realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

84. This claim arises under 18 U.S.C.§ 1595.

85. Defendants knowingly concealed, removed, confiscated, and or possessed Ms. Barbecho Bonilla's passport in violation of 18 U.S.C. § 1597(a), by:

   a. knowingly and with intent to defraud, recruiting and hiring Ms. Barbecho Bonilla when she was outside the United States for the purposes of employment in the United States, by means of materially false or fraudulent pretenses, representations, or promises, in violation of 18 U.S.C. § 1351; and

   b. knowingly concealing, removing, confiscating, and or possessing Ms. Barbecho Bonilla's passport in order to, without lawful authority, maintain, prevent, or restrict the labor of services of the Ms. Barbecho Bonilla in violation of 18 U.S.C. §1597(a)(3).

86. Ms. Barbecho Bonilla brings these claims pursuant to the civil cause of action for victims of unlawful conduct with respect to immigration documents in 18 U.S.C. § 1595.

87. As a result of Defendants' actions, Ms. Barbecho Bonilla suffered damages.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF COLORADO WAGE CLAIM ACT, COLO. REV STAT. § 8-4-101, *et seq.*
(All Defendants)

88. Ms. Barbecho Bonilla realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

89. This claim arises under Colo. Rev. Stat. § 8-4-101 *et seq*.

90. Defendants did not pay all wages or compensation due and owing to Ms. Barbecho Bonilla in accordance with Colo. Rev. Stat. § 8-4-109.

91. As a result, Ms. Barbecho Bonilla suffered damages.

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF COLORADO MINIMUM WAGE OF WORKERS ACT § 8-6-101, *et seq.*
(All Defendants)

92. Ms. Barbecho Bonilla realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

93. This claim arises under Colo. Rev. Stat. § 8-6-101 *et seq.*, Article XVIII, Section 15 of the Colorado Constitution, and 7 Colo. Code Regs §1103-1.

94. Plaintiff was employed as a domestic worker by Defendants and was therefore subject to the FLSA minimum wage.

95. Defendants were therefore required to pay Ms. Barbecho Bonilla at least the minimum wage in effect in Colorado for 2015–2018 for work performed for Defendants.

96. Defendants did not pay Ms. Barbecho Bonilla the minimum wage in effect in Colorado for 2015-2018 for any work performed.

97. Defendants' violations of the minimum wage laws in Colorado were willful.

98. As a result of Defendants' actions, Ms. Barbecho Bonilla suffered injuries.

99. Ms. Barbecho Bonilla is entitled to receive the wages and costs owed pursuant to Colo. Rev. Stat. § 8-6-118.

### FIFTH CLAIM FOR RELIEF
### BREACH OF CONTRACT
(All Defendants)

100. Ms. Barbecho Bonilla realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

101. Defendants and Ms. Barbecho Bonilla entered into employment contracts governing the terms of Ms. Barbecho Bonilla's employment with Defendants during Defendants' trips to Colorado for the years 2014-2018.

102. Ms. Barbecho Bonilla performed her obligations under these contracts.

103. Defendants breached these contracts by failing to comply with the terms and conditions of Ms. Barbecho Bonillas' employment.

104. As a result, Ms. Barbecho Bonilla suffered damages.

### SIXTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
(All Defendants)

105. Ms. Barbecho Bonilla realleges and incorporates by reference the allegations set forth in the preceding paragraphs.

106. Defendants were unjustly enriched.

107. Defendants refused to pay Ms. Barbecho Bonilla the full value of her wages.

108. Defendants knew or should have known that they were not entitled to retain Ms. Barbecho Bonilla's wages.

109. It is inequitable for Defendants to retain the substantial benefit they received by withholding wages owed to Ms. Barbecho Bonilla.

110. Equity requires that Defendants be disgorged of their unjust enrichment.

## DEMAND FOR JURY TRIAL

111. Ms. Barbecho Bonilla demands a jury for all issues so triable.

## PRAYER FOR RELIEF

112. Ms. Barbecho Bonilla respectfully requests that this Court enter an order:

   a. assuming jurisdiction of this case;

   b. declaring that Defendants violated the FLSA;

   c. granting judgment in favor of Ms. Barbecho Bonilla and awarding any unpaid wages and liquidated damages pursuant to the FLSA;

   d. declaring that Defendants violated the TVPA;

   e. granting judgement in favor of Ms. Barbecho Bonilla and awarding damages, both actual and punitive, pursuant to the TVPA;

   f. declaring that Defendants violated the Colorado Wage Claim Act;

   g. granting judgment in favor of Ms. Barbecho Bonilla and awarding wages and penalties owed as a result of Defendants' violation of the Colorado Wage Claim Act;

   h. declaring that Defendants violated the Colorado Minimum Wage of Workers Act;

   i. granting judgement in favor of Ms. Barbecho Bonilla and awarding wages and penalties owed as a result of Defendants' violation of the Colorado Minimum Wage Workers Act;

j.  declaring that both Defendants breached each of their contracts with Ms. Barbecho Bonilla;

k.  granting judgment in favor of Ms. Barbecho Bonilla and awarding damages for each Defendants' breach of each contract;

l.  declaring that both Defendants were unjustly enriched by Ms. Barbecho Bonilla;

m.  granting judgment in favor of Ms. Barbecho Bonilla and awarding damages for Defendants' unjust enrichment;

n.  awarding Ms. Barbecho Bonilla costs and attorneys' fees;

o.  awarding Ms. Barbecho Bonilla prejudgment and post-judgment interest;

p.  awarding other punitive and exemplary damages in an amount to be proven at trial;

q.  awarding compensatory and special damages in an amount to be proven at trial; and

r.  granting such other relief as this Court deems just and proper.

Respectfully submitted this 16 day of August, 2018.

   *s/ Jocelyn K. Jenks*
Jocelyn K. Jenks
Patricia Medige
Colorado Legal Services
1905 Sherman Street, Suite 400
Denver, Colorado 80203
Telephone: (303) 837-2732
Fax: (303) 830-7860
pmedige@colegalserv.org
jjenks@colegalserv.org

*Attorneys for Plaintiff Eliazar Barbecho Bonilla*